UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA,
ex rel. MICHAEL KRESS                                              CIVIL ACTION

VERSUS                                                                   NO.12-2380

MASONRY SOLUTIONS
INTERNATIONAL, INC.                                          SECTION "K"(1)

ORDER AND REASONS

Before the Court is a Motion for Judgment on the Pleadings, filed by Defendant Masonry

Solutions International, Inc. ("Masonry Solutions"). (R. Doc. 32).  Having reviewed the

pleadings, memoranda, and relevant law, the Court DENIES the motion for the following

reasons.

I.     BACKGROUND

On September 26, 2012, Michael Kress, on behalf of the United States of America, filed

a Complaint against Masonry Solutions under seal under 31 U.S.C. § 3730, alleging violations of

the False Claims Act ("FCA"), 31 U.S.C. 3792, *et seq.  See* Compl. ¶1, 5-7, R. Doc. 1.  Relator,

Kress, alleged that Masonry Solutions violated the FCA by delivering materials from a non-

designated country in violation of the Buy American Act ("BAA")[1] to the government with

labels indicating that the materials derived from the United States and overbilled the government

for the cost of those materials.

The United States declined to intervene on May 7, 2013.  Masonry Solutions was served

on February 25, 2014.  Masonry Solutions moved to dismiss the suit pursuant to Federal Rule of

Civil Procedure 4(m), which was denied. Order, May 12, 2014, R. Doc. 17.

---

[1]41 U.S.C. § 8301-8305.

1

On November 24, 2014, Masonry Solutions filed the instant Motion to Dismiss pursuant to Rule 12(c) for a judgment on the pleadings.  R. Doc. 32.  Masonry Solutions also filed, on December 9, 2014, a Motion to Review the Magistrate Judge's Opinion.  R. Doc. 39.  Masonry Solution's argument in that motion is related to the instant motion, such that the Court finds it necessary to issue a ruling on the instant motion before addressing the Motion to Review the Magistrate Judge's Opinion.

## II.     LEGAL STANDARD

### A.     Rule 12(c)

A motion brought pursuant to Rule 12(c) is designed to dispose of cases where the material facts are not in dispute  and only questions of law remain.  *Hughes v. Tobacco Inst., Inc.,* 278 F.3d 417, 420 (5th Cir. 2001).   In considering a Rule 12(c) motion, the central issue is whether, viewed in the light most favorable to the plaintiff, the complaint states a valid claim for relief. *Hughes v. Tobacco Inst., Inc.,* 278 F.3d 417, 420 (5th Cir.2001).  The court determines the merit of the Rule 12(c) motion by looking only to the substance of the pleadings and any judicially noticed facts. *Great Plains Trust Co. v. Morgan Stanley Dean Witter,* 313 F.3d 305, 312 (5th Cir.2002); *United States v. Renda Marine, Inc.,* 667 F.3d 651, 654 (5th Cir. 2012).

A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6). *Doe v. MySpace, Inc*., 528 F.3d 413, 418 (5th Cir. 2008) (citing *Johnson v. Johnson,* 385 F.3d 503, 529 (5th Cir.2004)).  To withstand dismissal under the 12(b)(6) standard, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  A motion to dismiss under rule 12(b)(6) "is viewed with disfavor and is

rarely granted." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)(citing

*Kaiser Aluminum & Chem. Sales v. Avondale Shipyards,* 677 F.2d 1045, 1050 (5th Cir.1982)).

The court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the

plaintiff." *Guidry v. Am. Public Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).

        This tenet, however, is inapplicable to legal conclusions: "[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice." *Aschroft*

*v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 1949-50, 173 L.Ed.2d 868 (2009) (citing *Twombly,*

550 U.S. at 555, 127 S.Ct. 1955).  "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged."  *Id.* (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955).  "The

plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer

possibility that a defendant has acted unlawfully."  *Id.* (citing *Twombly,* 550 U.S. at 556, 127

S.Ct. 1955).  "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed

factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including

factual allegations that when assumed to be true 'raise a right to relief above the speculative

level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).

        B.      **Rule 9(b)**

        Rule 9(b) applies to complaints alleging FCA claims.  *U.S. ex rel. Grubbs v. Kanneganti,*

565 F.3d 180, 185 (5th Cir. 2009).  "In alleging fraud or mistake, a party must state with

particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  The "three

main purposes" of Rule 9(b) are: (1) protecting a defendant's reputation from harm; (2)

minimizing "strike suits" and "fishing expeditions"; and (3) providing notice of the claim to the

adverse party.  *See Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994);

*Viacom, Inc. v. Hardbridge Merchant Services, Inc.*, 20 F.3d 771, 777 (7th Cir. 1994). The purposes of Rule 9(b) are served and "[a] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 784 (4th Cir. 1999).

The Fifth Circuit has stated commonly that Rule 9(b) requires the plaintiff alleging fraud state the particulars of the "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby." *Tuchman,* 14 F.3d at 1068. However, addressing Rule 9(b)'s application to FCA claims, the Fifth Circuit has recognized that the particularity demanded by Rule 9(b) "is context-specific, and thus there is no single construction of Rule 9(b) that applies in all contexts." *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 188 (5th Cir. 2009) (citation and internal quotation marks omitted); *see Tuchman*, 14 F.3d at 1067-68. "Depending on the claim, a plaintiff may sufficiently 'state with particularity the circumstances constituting fraud or mistake' without including all the details of any single court-articulated standard—it depends on the elements of the claim at hand." *Grubbs*, 565 F.3d at 188 (citation omitted).

In certain circumstances, the pleading requirements of Rule 9(b) may be slightly relaxed and the plaintiff may plead on information and belief when facts about the fraud are "peculiarly within the perpetrator's knowledge." *United States ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 330 (5th Cir. 2003); *United States ex rel. Willard v. Humana Health Plan of Texas, Inc.*, 336 F.3d 375, 385 (5th Cir. 2003); *see also United States ex rel. Williams v. Bell Helicopter Textron, Inc.,* 417 F.3d 450, 454 (5th Cir. 2005). However, this exception "must not be mistaken for

4

license to base claims of fraud on speculation and conclusory allegations." *Willard,* 336 F.3d at

385. "Even where allegations are based on information and belief, the complaint must set forth a

factual basis for such belief." *Id.*  The rationale for reducing the pleading burden when

information is in the defendant's possession appears to spring from the fact that an adverse party

would not willingly divulge incriminating information. *Lawrence v. Richman Group of Conn.,*

*LLC,* 2004 WL 2377140, at *4–5 (D.Conn. Sept. 30, 2004). Where the information needed to fill

out the complaint is in the hands of third parties, rather than defendants, this rationale for

reducing the pleading burden does not apply. *United States ex re. Rafizadeh v. Cont'l Common*

*Inc.,* 553 F.3d 869, 873 n.6 (5th Cir. 2008).

    In addition, some courts relax the Rule 9(b) pleading standard where the alleged fraud

occurred over an extended period of time and consisted of numerous acts. *United States ex rel.*

*Bledsoe v. Community Health Systems, Inc.,* 501 F.3d 493, 509–510 (6th Cir.2007) ("Where the

complaint alleges numerous fraudulent transactions over an extended period of time, it may be

impractical to require plaintiff to plead the specifics of each and every transaction."); *United*

*States ex rel. Bennett v. Medtronic, Inc.,* 747 F. Supp. 2d 745, 768-69 (S.D. Tex. 2010); *United*

*States ex rel. Foster v. Bristol-Myers Squibb Co.*, 587 F. Supp. 2d 805, 821 (E.D. Tex.

2008)(listing district court cases in the Fifth Circuit); *United States v. Toyobo Co*., 811 F. Supp.

2d 37, 44 (D.D.C. 2011)(quoting *United States ex rel. Williams v. Martin–Baker Aircraft Co.,*

*Ltd.,* 389 F.3d 1251, 1259 (D.C.Cir.2004).  In those cases, courts allow the relator to plead the

fraudulent scheme with particularity and provide representative examples of specific fraudulent

acts conducted pursuant to that scheme. *Bledsoe*, 501 F.3d at 510; *accord Grubbs*, 565 F.3d at

190 (holding that a relator's complaint may survive despite failing to allege details of a false

claim itself by alleging details of a scheme with reliable indicia leading to the inference that

claims were submitted).

### (C)    FCA Claim Elements

The False Claims Act ("FCA") establishes a scheme that permits either the Attorney

General, § 3730(a), or a private party, § 3730(b), to initiate a civil action alleging fraud on the

Government. *U.S. ex rel. Eisenstein v. City of New York, New York,* 556 U.S. 928, 932, 129 S.

Ct. 2230, 2233, 173 L. Ed. 2d 1255 (2009).  "A private enforcement action under the FCA is

called a *qui tam* action, with the private party referred to as the 'relator.'" *Id.*  A violator of the

FCA is liable to the United States for civil penalties and three times the amount of the

government's damage, 31 U.S.C. § 3729(a), and relators who prosecute enforcement actions on

behalf of the government receive a percentage of any recovery in a successful suit.  31 U.S.C. §§

3729(a), 3730(b)(1), (d)(1)-(4).

The Fraud Enforcement Recovery Act of 2009 amended sections of the False Claims Act,

including sections 31 U.S.C. §§ 3729(a)(1) and (2), which are at issue in this case.  Pub. L. No.

111-21, § 386, 123 Stat. 1617 (2009). The False Claims Act, as amended, makes it a civil

violation for any person who

> (A) knowingly presents, or causes to be presented, a false or fraudulent claim for
> payment or approval;
> (B) knowingly makes, uses, or causes to be made or used, a false record or statement
> material to a false or fraudulent claim;
> (C) conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G)

31 U.S.C. § 3729(a)(1)(A)-(C). "[The FCA] attaches liability, not to the underlying fraudulent

activity or to the government's wrongful payment, but to the *claim* for payment." *U.S. ex rel.*

*Longhi v. United States*, 575 F.3d 458, 466-67 (5th Cir. 2009) (quoting *Harrison,* 176 F.3d at

785) (emphasis added). The FCA defines the term "claim" as:

**(A)** [...] any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that--

   **(i)** is presented to an officer, employee, or agent of the United States; or

   **(ii)** is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government--

      **(I)** provides or has provided any portion of the money or property requested or demanded; or

      **(II)** will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded; and

**(B)** does not include requests or demands for money or property that the Government has paid to an individual as compensation for Federal employment or as an income subsidy with no restrictions on that individual's use of the money or property...

31 U.S.C. § 3729(b)(2).

The Fifth Circuit has traditionally applied a four-part test setting forth the elements of an FCA claim under sections 3729(a), which restates the elements set forth in the statute: (1) whether "there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due (i.e., that involved a claim)." *Longhi*, 575 F.3d at 467.

To satisfy the scienter requirement, an FCA claim must allege that the false statements or claims were "knowingly" made or caused to be made. The FCA defines the terms "knowing" and "knowingly," which mean that a person, with respect to information—

   (i) has actual knowledge of the information;

   (ii) acts in deliberate ignorance of the truth or falsity of the information; or

   (iii) acts in reckless disregard of the truth or falsity of the information.

31 U.S.C. § 3729(b). The FCA requires "no proof of specific intent to defraud," 31 U.S.C. § 3792(b)(1)(B), and, under Rule 9(b), knowledge may be alleged generally. Fed. R. Civ. P. 9(b).

FCA liability also requires that a false statement be "material," under the third prong of the analysis. The statute itself defines the term "material" where it is used as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or

property." 31 U.S.C. § 3729(b)(4).  Prior to the Fraud Enforcement and Recovery Act of 2009

("FERA"), which amended sections of the FCA, the Fifth Circuit already applied the "natural

tendency" test to determine materiality, asking whether "the false or fraudulent statements either

(1) make the government prone to a particular impression, thereby producing some sort of effect,

or (2) have the ability to effect the government's actions, even if this is a result of indirect or

intangible actions on the part of the Defendants."  *Longhi*, 575 F.3d at 470.  "All that is required

under the test for materiality, therefore, is that the false or fraudulent statements have the

potential to influence the government's decisions." *Id.*

In the context of claims made under the False Claims Act, the Fifth Circuit in *Grubbs*

squarely addressed the question of "with what particularity a complaint must plead the actual

details of the false claim," specifically as to sections 3729(a)(1)(A)-(C).  *Grubbs*, 565 F.3d at

188.  As to section 2739(a)(1)(A), the Fifth Circuit recognizes an express "presentment"

requirement. "Fraudulent presentment requires proof only of the claim's falsity, not of its exact

contents," *Grubbs*, 565 F.3d 189, because "to require these details at pleading is one small step

shy of requiring production of actual documentation with the complaint, a level of proof . . .

significantly more than any federal pleading rule requires." *Grubbs*, 565 F.3d at 190. The Fifth

Circuit has noted that, in contrast to common law fraud, the FCA "lacks the element of reliance

and damages." *Id.* Thus, even "if [the relator] cannot allege the details of an actually submitted

false claim," it is sufficient to alleged that the claim was knowingly presented, regardless of its

exact amount, so long as the relator alleges particular details of a scheme to submit false claims

paired with reliable indicia that lead to a strong inference that claims were actually submitted. *Id.*

"The relators must, however, allege facts linking a scheme to submit false claims to the

submission of false claims." *Bennett*, 747 F. Supp. 2d at 767.

8

The Court in *Grubbs*, addressing allegations of falsely submitted bills for services not provided, noted that details leading to a "strong inference that claims actually submitted" could include descriptions of recorded, but unprovided, services and a description of the billing system that the records were likely entered into.  565 F.3d at 190-91.  It went on to note that "[i]n many cases, the defendants will be in possession of the most relevant records. . . with which to defend on the grounds that alleged falsely-recorded services were not recorded, were not billed for, or were actually provided."  *Id.* at 191.  Thus, when a scheme is sufficiently alleged, the "[d]efendants either have or do not have evidence that the alleged phony services were actually provided," and "[d]iscovery can be pointed and efficient, with a summary judgment following on the heels of the complaint if billing records discredit the complaint's particularized allegations."  *Id*.

While the FCA imposes liability on persons who present and submit false or fraudulent claims for payment to the Government, under section 3729(a)(1)(B), the FCA also imposes liability on any person knowingly makes or cause to be made a false statement in order that is "material to" a false or fraudulent claim.  Though no "presentment" is required, *Rafizadeh*, 553 F.3d at 874, the *Grubbs* court stated that a relator must allege with particularity "the recording of a false record, when it is made with the requisite *intent*" to satisfy the statute.  *Grubbs,* 565 F.3d at 193 (emphasis added).  However, FERA amended this section and eliminated the requirement that a relator show that the defendant intended that the Government itself pay the claim. *See* S. REP. 111-10, 12, 2009 U.S.C.C.A.N. 430, 439; *see also United States ex rel. Westrick v. Second Chance Body Armor, Inc.,* 685 F. Supp. 2d 129, 140 (D.D.C. 2010).  Thus, the relator need only satisfy the materiality requirement of the act to sufficiently state a claim under this section.

As to section 3729(a)(1)(C), to state a claim, the relator must show "(1) the existence of

an unlawful agreement between defendants to get a false or fraudulent claim allowed or paid by

[the Government] and (2) at least one act performed in furtherance of that agreement." *Grubbs*,

565 F.3d at 193; *see also United States ex rel. Manuel v. Livingston Mgmt., Inc.*, 932 F. Supp. 2d

674, 681 (M.D. La. 2012).  General civil conspiracy principles apply to FCA conspiracy claims.

*See, e.g.*, *United States ex rel. Westrick v. Second Chance Body Armor, Inc.*, 685 F. Supp. 2d

129, 140 (D.D.C. 2010)("The FCA does not define a conspiracy, but courts have held that

general civil conspiracy principles apply to FCA conspiracy claims."); *United States ex rel.*

*Jamison v. McKesson Corp.,* 2009 WL 3176168, at *14 (N.D. Miss. 2009); *United States ex rel.*

*Phillips v. L-3 Commc'ns Integrated, Sys. L.P.*, 2012 WL 3649699, at *8 (N.D. Tex. 2012).  The

essence of a civil conspiracy is as follows:

> A civil conspiracy is an agreement between two or more persons to injure another by
> unlawful action. Express agreement among all the conspirators is not necessary to find
> the existence of a civil conspiracy. Each conspirator need not have known all of the
> details of the illegal plan or all of the participants involved. All that must be shown is that
> there was a single plan, that the alleged coconspirator shared in the general conspiratorial
> objective, and that an overt act was committed in furtherance of the conspiracy that
> caused injury to the complainant.

*Jamison,* 2009 WL 3176168, at *14 (quoting *United States v. Murphy,* 937 F.2d 1032, 1039 (6th

Cir.1991)).

### (D)   Buy American Act

The Buy American Act ("BAA") states that:

> Every contract for the construction, alteration, or repair of any public building or public
> work in the United States shall contain a provision that in the performance of the work
> the contractor, subcontractors, material men, or suppliers shall use only--
>> (1) unmanufactured articles, materials, and supplies that have been mined or
>> produced in the United States; and
>> (2) manufactured articles, materials, and supplies that have been manufactured in
>> the United States substantially all from articles, materials, or supplies mined,
>> produced, or manufactured in the United States.

41 U.S.C.A. § 8303.  The BAA applies to the procurement of goods and services on supply and

construction contracts for the federal government where the government is acquiring materials

for public use. *See* Federal Acquisition Regulation, 48 C.F.R. §§ 25.100-25.206 (implementing

the BAA).  Pursuant to a waiver of the BAA, however, products from certain exempt "designated

countries" do not violate the BAA. *See Marbex, Inc.*, 87-1 CPD ¶468, B 225799, 1987 WL

102277 (Comp. Gen. 1987); 48 CFR § 25.003 (listing designated countries exempt from BAA);

28 C.F.R. § 25.400 (procedures relating to other trade agreements limiting application of the

BAA).  Compliance with the BAA may serve as a basis for FCA violations.  *See, e.g.*, *United*

*States v. Rule Indus., Inc.,* 878 F.2d 535 (1st Cir. 1989); *S.J. Amoroso Const. Co. v. United*

*States*, 12 F.3d 1072, 1077 (Fed. Cir. 1993).

## III.     DISCUSSION

Kress's Complaint is premised on the Fair Claims Act (FCA) and the Buy American Act

(BAA).  Kress, who worked as a laborer for Masonry Solutions, contends that Masonry

Solution's violations of the BAA in this instance gave rise to violations of the FCA. First,

Relator alleges that the United States Army Corps of Engineers (USACE) developed

specifications with Masonry Solutions and its principal, Wayne Ruth, for masonry anchorage and

enhancement systems for masonry walls of pumping stations in the New Orleans area. Compl. ¶¶

12-15, 36. One such specification was the installation of stainless steel spiral wall ties and

hollow injectable steel enhancement anchor rods.  Compl. ¶17.  All contracts issued by the

USACE implement the BAA, providing a preference for domestic construction material. Compl.

¶18. The USACE Contracting Officer determined that the BAA, however, is waived for

designated country materials. Compl. ¶18.  According to Kress, Masonry Solutions provided

materials that failed to comply with the BAA because the materials originated from China, a

11

non-designated country, and Masonry Solutions overbilled the Government for these materials. Compl. ¶¶19-28. Kress alleges that the BAA applied to the stainless steel materials Masonry Solutions supplied to the Government through its obligations under the USACE contracts contained in relevant general contractors' agreements, that it was obligated under the BAA to provide materials in compliance and state which country the materials came from, and and that China is not a country that is a "designated country" exempt from the BAA. ¶ 29-34.

Masonry Solutions offers three main arguments that Kress's Complaint fails to plead with particularity facts sufficient to state a claim under the FCA. First, Masonry Solutions alleges that Kress has not pled how he has knowledge of certain facts he alleges in his Complaint, such as the basis for allegations that the products were manufactured in China or the price of the spiral wall ties. Masonry Solutions distinguishes Kress's Complaint from the relator's in *Grubbs*, asserting that Grubbs sufficiently stated a claim as he alleged facts detailed how he came upon the information that formed the basis of his Complaint. Second, Masonry Solutions argues that Kress cannot plead details of an alleged scheme "upon information and belief," and "cannot merely allege fraudulent 'schemes,' but must also allege, with particularity, the false claims actually submitted." Finally, Masonry Solutions argues that Kress cannot allege how the Masonry Solutions knowingly violated the BAA and made false claims as he has not alleged that any contracting officer has determined that Masonry Solutions have violated the BAA.

As to its first argument, the Court finds that Masonry Solutions' argument that Kress's failure to plead facts detailing the source of his knowledge is unfounded. The Court in *Grubbs* emphasized the fact that Rule 9(b) is context-specific and must remain "flexible" so as to effectuate Rule 9(b) "without stymieing legitimate efforts to expose fraud." *Grubbs*, 565 F.3d at 190. Kress alleges that, as a laborer, he was directly involved in the repackaging and relabeling

of the materials delivered by Masonry Solutions to the Government, the very act that forms the

foundation of the scheme Kress alleges occurred. The fact that Kress does not allege all facts that

would inform Defendant of the basis of his knowledge is inapposite. Pleading every detail of the

source of his knowledge is not required in this case, unlike in those FCA cases involving a public

disclosure where a relator must plead that he is an "original source" of the information.[2]   What is

required under the Federal Rules is simple and concise statements that allege, with particularity,

the *circumstances surrounding the fraud*. Fed. R. Civ. P. 8, 9(b). The issue, for purposes of Rule

9(b) is whether Kress pled facts detailing the circumstances surrounding the fraud such that

Masonry Solutions is notified of the claim and discovery may be sufficiently tailored to that

claim. For purposes of Rule 12(b)(6), it is sufficient that Kress plead facts that, taken as true, and

drawing all inferences in favor of the relator, state a claim that is plausible on its face.  At this

stage in litigation, the court must balance, with a "vigilant hand," the pleading requirements,

looking only to the pleading itself.  *See Grubbs*, 565 F.3d at 191.  Thus, the Court turns to the

issue of whether Kress pled with particularity the circumstances surrounding the fraud and stated

a claim under the FCA pursuant to Rule 9(b) and Rule 12(b)(6).

Upon review of the Complaint, Kress's Complaint satisfies Rule 9(b) and Rule 12(b)(6)

on its section 3792(a)(1)(A) claim.  In his Complaint, Kress alleges that Masonry Solutions was

subject to an agreement between general contractors and the USACE to comply with the BAA in

---

[2] Because of the strong financial incentive prompting relators to file FCA *qui tam* actions, the FCA attempts to balance promotion of exposing fraud against the government and preventing suits by opportunistic late-comers by imposing a jurisdictional bar on certain suits based upon a "public disclosure" of fraud allegations.  *See* 31 U.S.C. § 3730(e)(4)(A); *United States ex rel. Reagan v. East Tex. Med. Cent. Reg'l Healthcare Sys.*, 384 F.3d 168, 174 (5th Cir. 2004).  When a suit is based upon a public disclosure, the law requires the relator be an "original source," or an individual who has "direct and independent knowledge of the information on which the allegations are based" and "has voluntarily provided the information to the Government before filing an action under this section which is based on the information." 31 U.S.C. § 3730(e)(4)(B).  However, "the original-source independent-knowledge requirement is only triggered if the claims are based on information that is *publicly disclosed*."  *Grubbs*, 565 F.3d at 194 (emphasis added).

providing construction materials originating from a "designated" country. *See* Compl. ¶ 29-34. Kress alleges that Masonry Solutions, through its principal, Wayne Ruth, created a fictional company named "Gruen Stark." Compl. ¶¶ 27,39. He alleges that Masonry Solutions relabeled steel construction materials manufactured in China, a non-designated country under the BAA, and shipped through London, with labels stating "Made in the USA" and with the name "Gruen Stark." Compl. ¶¶ 26-28. He then alleges that Masonry Solutions incurred a cost of $3.68 per spiral wall tie but charged the Government 127.59 per tie.  Compl. ¶ 28. Further, according to Kress, though the steel rods were slightly altered in the United States, the cost of the alterations was less than 50% of the total cost of the product. Compl. ¶ 26.

Though Masonry Solutions contends that Kress must allege, with particularity, the false claims actually submitted, the Fifth Circuit has held otherwise.  Indeed, as to the presentment requirement, Kress need proof only of the claim's falsity and not of its exact contents; Kress may do so by pleading with particularity the circumstances surrounding the fraud, where the details of that scheme are "paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Grubbs*, 565 F.3d at 189. Kress has alleged sufficient details of a scheme involving the creation of a company and mislabeling of products in order to appear to comply with the standards set forth in the BAA.  If these details were not sufficient themselves, Kress alleges the sums charged for the spiral wall ties as an example of the false claims submitted to the Government for payment. The price disparity alone would not sufficiently demonstrate falsity; however, Kress demonstrates that the claim was false by alleging sufficient details of a scheme to mislabel and misrepresent the source of the goods sold to the Government. As a laborer, he alleges facts attesting to the truth of this scheme, which leads to a strong inference that the false claims were submitted to the Government.

Moreover, Kress has stated facts surrounding a scheme that consisted of numerous acts over an extended period of time, and facts that are based on information peculiarly within the control of Masonry Solutions. These facts warrant a relaxation of the Rule 9(b) pleading standard.  In this case, as in many others as the *Grubbs* court noted, Masonry Solutions is in possession of the most relevant records with which to defend that the materials were not manufactured in a non-designated country, for example, or that the Government was not overbilled for the materials Masonry Solutions provided. Because Kress has alleged a sufficient scheme, discovery can be "pointed and efficient, with summary judgment following on the heels of the complaint if [such records within the Defendant's control] discredit the complaint's particularized allegations."  *Grubbs*, 565 F.3d at 191. Thus, although Kress has alleged some facts "upon information and belief," the facts alleged in the Complaint taken as a whole are sufficient to pass muster under the FCA.

Kress's Complaint also pled that Masonry Solutions knowingly made such false claims to the Government, as he has alleged facts detailing a scheme with which to receive payment for materials not in compliance with the BAA.  The alleged fraudulent conduct is "material" as it had the tendency to influence the Government to pay the amount requested, based on the unapparent misrepresentation.  Finally, the fraudulent claim caused the Government to pay Masonry Solutions and to pay more than it would have otherwise agreed. Thus, taking these facts as true, Kress has sufficiently pled facts that give rise to the claim that false claims were presented to the Government for payment under section 3729(a)(1)(A).

As to section 3729(a)(1)(B), Kress has alleged facts supporting a claim that a false statement was made that was material to the false claims allegedly submitted to the Government. Kress's Complaint alleged that each mislabeled box of materials was a false statement created as

a part of a scheme to obtain payment for the Government for materials not in compliance with the BAA.  Adopting the same reasoning above, Kress has sufficiently alleged that Masonry Solutions knowingly mislabeled the materials. In addition, Kress has alleged that the false statement is material to the false claim as he alleges that it was submitted in support of the false claim; because the alleged false statement misrepresented the origin of the products, it would have influenced the Contracting Officer in charge of insuring compliance with the BAA allowing the false claim for payment to be submitted. This fact defeats Masonry Solutions' argument that Kress must plead that the Contracting Officer found Masonry Solutions in violation of the BAA. Construing the facts in favor of Kress and taking them as true, the Complaint states a claim for relief under section 3729(a)(1)(B).

As to an alleged conspiracy under section 3729(a)(1)(C), Kress pled the following specific facts: (1) that Wayne Ruth and Masonry Solutions created a false company; (2) that the company's name was placed on materials with "Made in the USA" that were repackaged from China, in violation of the BAA; and (3) that Ruth and Masonry Solutions did so knowingly in order to defraud the Government through overbilling.  Compl. ¶¶ 19-20, 25, 39. Kress specifically alleges, in addition, that Masonry Solutions acted through its principal, Ruth, but that through the alleged fraudulent acts Ruth acted outside of the scope of his employment as an agent of the corporation.  Compl. ¶ 37. Thus, pursuant to the intracorporate conspiracy doctrine, Kress has alleged facts that would allow the inference that Ruth and Masonry Solutions formed an agreement to defraud the Government and performed overt acts in furtherance of that agreement.[3]

---

[3] *See ASARCO LLC v. Americas Min. Corp.*, 382 B.R. 49, 81 (S.D. Tex. 2007) ("[I]t is implicit in the intracorporate conspiracy doctrine that employees, directors, and agents of a corporation, who are not acting within the scope of their employment, can conspire with that corporation."); *see also Cook Cnty., Ill. v. United States ex rel. Chandler,*

In conclusion, the Court finds that Kress has alleged facts sufficiently particular to apprise Masonry Solutions of the claims on which it is to prepare a defense as well as provided sufficient facts to state a claim that is plausible on its face, meeting the pleading requirements of both Rule 9(b) and Rule 12(b)(6).

Accordingly,

**IT IS ORDERED** that Defendant Masonry Solutions' Motion for Judgment on the Pleadings (R. Doc. 32) is **DENIED.**

New Orleans, Louisiana, this __26th__ day of _____January_____, 2015.

_____
**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT JUDGE**

---

538 U.S. 119, 125, 123 S.Ct. 1239, 155 L.Ed.2d 247 (2003)(recognizing that the statutory term "person" extends to incorporate persons as well as natural persons).