UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. MICHAEL KRESS | CIVIL ACTION |
| VERSUS | NO. 12-2380 |
| MASONRY SOLUTIONS INTERNATIONAL, INC. | SECTION "K"(1) |

### ORDER AND REASONS

Before the Court is a Motion for Summary Judgment filed by Defendant, Masonry Solutions, Inc. ("Masonry Solutions"). (R. Doc. 59). Having reviewed the pleadings, memoranda, exhibits, record, and relevant law, the Court GRANTS the motion for the following reasons.

I.   BACKGROUND

On September 26, 2012, Michael Kress ("Relator"), on behalf of the United States of America, filed a Complaint against Masonry Solutions, Inc. ("Masonry Solutions") alleging violations of the False Claims Act, 31 U.S.C. §§ 3729 *et seq* ("FCA"). Relator is a former employee of Masonry Solutions. The United States Army Corps of Engineers (USACE) contracted with private contractors to reinforce masonry walls of pumping stations in New Orleans. Masonry Solutions was hired as a subcontractor in relation to four USACE projects. Def. Mem. Supp. Mot. Summ. J. 2, R. Doc. 59. Masonry Solutions provided injectable steel spiral wall tie kits and enhancement anchors as well as installed these products into the masonry walls at the project sites. As to two projects (on pumping stations), Masonry solutions subcontracted with Benetech, LLC, ("Benetech") the contractor in charge of reinforcing the two pumping stations for the USACE. As to one project, Masonry Solutions sued Benetech for non-payment; though Benetech applied for and received payment from the USACE for the materials

1

and labor provided by Masonry Solutions, Benetech failed to pay Masonry Solutions, citing various reasons including Benetech's belief that Masonry Solutions' products failed to comply with the Buy American Act. Relator, Michael Kress, provided information in that action relative to his knowledge as an employee of Masonry Solutions and Masonry Solutions' compliance with the Buy American Act. Relator admits that this information led to the instant action, wherein Relator alleges that Masonry Solutions failed to comply with the Buy American Act and, by virtue of its non-compliance, submitted false claims and made false statements for payment to the USACE in violation of the False Claims Act. The United States declined to intervene in the instant action on May 7, 2013, and Masonry Solutions was served on February 25, 2014.

Masonry Solutions has filed the instant Motion for Summary Judgment dismissing all of Relator's claims under the False Claims Act arguing that Masonry Solutions is entitled to judgment as a matter of law. Relator, in his Opposition, asserts that Masonry Solutions offers the Court "almost no analysis" as to why it is entitled to summary judgment and has produced little evidence to corroborate its assertions as Relator maintains that Masonry Solution has been resistant to full disclosures of discovery. In the alternative, Relator seeks a continuance of the Motion for Summary Judgment under Federal Rule of Civil Procedure 56(d).

## II.    LEGAL STANDARDS

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Pylant v. Hartford Life and Accident Insurance* Company, 497 F.3d 536, 538 (5th Cir. 2007)

(quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). A fact is material if it could affect the outcome of the lawsuit under the governing law. *Sossamon v. Lone Star State of Texas,* 560 F.3d 316, 326 (5th Cir.2009). Summary judgment evidence must be "viewed in the light most favorable to the nonmovant, with all factual inferences made in the nonmovant's favor." *Bazan ex rel Bazan v. Hildago County,* 246 F.3d 481, 489 (5th Cir.2001) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 255, 106 S.Ct. at 2513). When drawing all reasonable inferences in favor of the nonmoving party, however, the court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 2110, 147 L. Ed. 2d 105 (2000).

The party moving for summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Stults v. Conoco,* 76 F.3d 651 (5th Cir.1996) (citing *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 912–13 (5th Cir. 1992)). If the nonmoving party would bear the burden of proof on a claim at trial, the moving party need not negate the elements of that claim, but must only "point out the absence of evidence supporting the nonmoving party's case." *Brown v. Trinity Catering, Inc.* 2007 WL 4365384 (E.D.La. Dec. 11, 2007) (citing *Stults,* 76 F.3d at 656).

When the moving party has carried its burden under Rule 56, the non-moving party then bears the burden of establishing the existence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986). The opponent must do more than simply show that there is some metaphysical doubt as to the material facts: the nonmoving party must go beyond the pleadings and come forward with "specific facts showing that there is a genuine issue for trial." *Id.* at 588; *see also Celotex Corp.*

3

*v. Catrett,* 477 U.S. at 324, 106 S.Ct. at 2553; *Tubacex, Inc. v. M/V Risan,* 45 F.3d 951, 954 (5th Cir.1995). As the Fifth Circuit has explained:

> [c]onclusory statements, speculation, and unsubstantiated assertions cannot defeat a motion for summary judgment. The Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim.

*RSR Corporation v. International Insurance Company,* 612 F. 3rd 851, 857 (5th Cir. 2010). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Adams v. Travelers Indem. Co. of Connecticut*, 465 F.3d 156, 164 (5th Cir. 2006)(citation and internal quotation marks omitted). "A failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Id.*

Rule 56(d) authorizes a district court to "order a continuance to permit affidavits to be taken or depositions to be taken or discovery to be had, if the non-movant files affidavits showing that he or she cannot for reasons stated present by affidavit facts necessary to justify the party's opposition." *Adams v. Travelers Indem. Co. of Connecticut*, 465 F.3d 156, 162 (5th Cir. 2006)(citation and internal quotation marks omitted). Under Rule 56(d), if a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order. Fed. R. Civ. P. 56(d); *see McKay v. Novartis Pharm. Corp.,* 751 F.3d 694, 700 (5th Cir. 2014).

Rule 56(d) motions for additional discovery are "broadly favored and should be liberally granted' because the rule is designed to 'safeguard non-moving parties from summary judgment

motions that they cannot adequately oppose." *Am. Family Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013)(quoting *Raby v. Livingston,* 600 F.3d 552, 561 (5th Cir.2010))(internal quotation marks omitted). However, the Fifth Circuit has long recognized that "a plaintiff's entitlement to discovery prior to a ruling on a motion for summary judgment is not unlimited, and may be cut off." *Washington v. Allstate Ins. Co.,* 901 F.2d 1281, 1285 (5th Cir.1990) (citations omitted). The parties seeking Rule 56(d) relief "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts." *Biles*, 714 F.3d at 894. Instead, the Rule 56(d) movant "must set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." *Id.*; *see also Culwell v. City of Fort Worth*, 468 F.3d 868, 873 (5th Cir. 2006) ("To qualify for relief . . . a party must show both why it is currently unable to present evidence creating a genuine issue of fact and how a continuance would enable the party to present such evidence."); *Adams*, 465 F.3d at 162. "If it appears that further discovery will not provide evidence creating a genuine issue of material fact, the district court may grant summary judgment." *Raby,* 600 F.3d t 561 (quoting *Access Telecom, Inc. v. MCI Telecomm. Corp.,* 197 F.3d 694, 720 (5th Cir.1999))(internal quotation marks omitted).

    B.  False Claims Act

    The False Claims Act ("FCA") makes it a civil violation for any person who:

    (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

    (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

    (C) conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G)

31 U.S.C. § 3729(a)(1)(A)-(C). "[The FCA] attaches liability, not to the underlying fraudulent activity or to the government's wrongful payment, but to the *claim* for payment." *U.S. ex rel. Longhi v. United States*, 575 F.3d 458, 466-67 (5th Cir. 2009) (quoting *Harrison,* 176 F.3d at 785) (emphasis added).

The Fifth Circuit has traditionally applied a four-part test setting forth the elements of an FCA claim under sections 3729(a), which restates the elements set forth in the statute: (1) whether "there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due (i.e., that involved a claim)." *Longhi*, 575 F.3d at 467.   While the FCA imposes liability on persons who present and submit false or fraudulent claims for payment to the Government under section 3729(a)(1)(A), the FCA under section 3729(a)(1)(B) also imposes liability on any person knowingly makes or cause to be made a false statement that is "material to" a false or fraudulent claim.

To satisfy the scienter requirement in both sections (A) and (B), an FCA claim must allege that the false claims and false statements were "knowingly" made or caused to be made. The FCA defines the terms "knowing" and "knowingly," which means that a person, with respect to information—

    (i) has actual knowledge of the information;

    (ii) acts in deliberate ignorance of the truth or falsity of the information; or

    (iii) acts in reckless disregard of the truth or falsity of the information.

31 U.S.C. § 3729(b).

FCA liability requires that a false statement be "material," under the third prong of the analysis under the test applicable section (A) and as to a false statement under section (B).  The statute itself defines the term "material" where it is used as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4).  The Fifth Circuit has applied the "natural tendency" test to determine materiality, asking whether "the false or fraudulent statements either (1) make the government prone to a particular impression, thereby producing some sort of effect, or (2) have the ability to effect the government's actions, even if this is a result of indirect or intangible actions on the part of the Defendants." *Longhi*, 575 F.3d at 470.  "All that is required under the test for materiality, therefore, is that the false or fraudulent statements have the potential to influence the government's decisions." *Id.*

C. Buy American Act

Compliance with the BAA may serve as a basis for FCA violations.  *See, e.g.*, *United States v. Rule Indus., Inc.,* 878 F.2d 535 (1st Cir. 1989); *S.J. Amoroso Const. Co. v. United States*, 12 F.3d 1072, 1077 (Fed. Cir. 1993).  The BAA applies to the procurement of goods and services on supply and construction contracts for the federal government where the government is acquiring materials for public use. *See* Federal Acquisition Regulation, 48 C.F.R. §§ 25.100-25.206 (implementing the BAA); 41 U.S.C.A. § 8303 (The Buy American Act applies to "[e]very contract for the construction, alteration, or repair of any public building or public work in the United States.").

The Buy American Act provides, in pertinent part:

> [O]nly unmanufactured articles, materials, and supplies that have been mined or produced in the United States, and only manufactured articles, materials, and supplies that have been manufactured in the United States substantially all from articles, materials,

7

> or supplies mined, produced, or manufactured in the United States, shall be acquired for public use unless the head of the department or independent establishment concerned determines their acquisition to be inconsistent with the public interest or their cost to be unreasonable.

41 U.S.C.A. § 8302(a)(1).  The Buy American Act, as implemented by the USACE contract, provides a preference for domestic construction material.  48 C.F.R. § 52.225-11. Domestic construction material includes material "manufactured in the United States" if:

> (i) The cost of its components mined, produced, or manufactured in the United States exceeds 50 percent of the cost of all its components. Components of foreign origin of the same class or kind for which nonavailability determinations have been made are treated as domestic; or
>
> (ii) The construction material is a COTS item.

48 C.F.R. § 52.225-11. Though the FCA itself does not provide a definition for "manufacture," as courts have noted, "[o]ver the years, the Comptroller General has adopted different, and sometimes conflicting, standards as to what constitutes 'manufacturing' under the Buy American Act. The basic test seems to be that if the operations performed on the foreign item create a basically new material or result in a substantial change in physical character, the item becomes a component manufactured in the United States." *A. Hirsh, Inc. v. U.S.*, No. CIV. A. 90-2179, 1991 WL 102984, at *3 (E.D. Pa. June 11, 1991)(citing *U.S. v. Rule Industries, Inc.,* 878 F.2d 535 (1st Cir.1989); 45 Comp.Gen. 658, 659–60 (1966)); *see also In re Orlite Engineering Co., Ltd.,* 88–1 Comp. Gen. Proc. Dec. 300 (1988); *In re Davis Walker,* 76–2 Comp. Gen. Proc. Dec. ¶ 182 (1976); *Textron, Inc., Bell Helicopter Textron Div. v. Adams*, 493 F. Supp. 824, 831 (D.D.C. 1980).

The USACE has determined that the World Trade Organization Government Procurement Agreement and Free Trade Agreements apply to its contracts, thus "Buy American restrictions are waived for designated country construction materials." 48 C.F.R. § 52.225-11;

*see Marbex, Inc.*, 87-1 CPD ¶468, B 225799, 1987 WL 102277 (Comp. Gen. 1987). Designated countries include those countries party to the WTO GPA, and, therefore, designated country construction materials include WTO GPA country construction material. A WTO GPA country construction material means a construction material that:

> (1) Is wholly the growth, product, or manufacture of a WTO GPA country; or
>
> (2) In the case of a construction material that consists in whole or in part of materials from another country, has been substantially transformed in a WTO GPA country into a new and different construction material distinct from the materials from which it was transformed.

48 C.F.R. § 52.225-11.

### III.   DISCUSSION

Relator's success on his FCA claims in this matter depend upon his ability to demonstrate that Masonry Solutions violated the BAA and made false claims to the Government by submitting a claim or claims for an amount substantially more than materials in compliance with the BAA would cost or by making false statements through its packaging label "Made in USA" prompting the Government to pay a claim it otherwise would not have paid.

In its motion, Masonry Solutions argues that it neither violated the BAA nor, consequently, the FCA. Masonry Solutions argues that it accurately presented information to its contractors in relation to its request for payment. First, it accurately labeled boxes of spiral wall tie kits "Made in USA" as the material was purchased from England then processed in the United States at Masonry Solutions' facilities and sold as kits. Specifically, the stainless steel rods were manufactured in England and were packaged with Compatible Injectable Filler (CIF) material made in the United States and sold as spiral wall tie kits. The materials complied with the BAA, Masonry Solutions argues, because England is an exempt "designated" country under the WTO

9

GPA and the spiral wall tie kits were processed in the United States. Masonry Solutions further notes that "[t]here was no requirement . . . to post the country of origin of [sic] the materials on [the] side of the box," and thus did not make a false statement. Thus, these materials did not violate the BAA nor did labeling these materials "Made in USA" make a false statement under the FCA.[1]

As to the enhancement anchors delivered by Masonry Solutions, the Defendant argues that, although the pre-manufacture raw material for the enhancement anchors was purchased and shipped from China, it was subsequently manufactured by Masonry Solutions in the United States through a cold-forging process. This process materially changed the molecular properties of the material, such that it would be considered a domestic construction material manufactured in the United States under the BAA.

In support, Defendant includes an attached declaration from the president of Masonry Solutions, Wayne Ruth, and a letter from Wayne Ruth providing information relative to the company's compliance with the BAA to the U.S. Army Corps of Engineers. In this letter, Ruth describes in detail the cold-forging process that takes place at Masonry Solutions' Maryland facility; the cold-forging physically strengthens and reinforces the steel at the molecular level, a process necessary to strengthen the steel to meet the specifications for the functionality of its use. Masonry Solutions offers Mill reports verifying the physical and chemical analysis of the material. In his letter, Ruth also states that "the initial material . . . . is then incorporated into an end product in Masonry Solutions' Maryland manufacturing facility, creating domestically manufactured and furnished construction material." R. Doc. 59-4, at 8. Moreover, Ruth states

---

[1] In a Statement of Interest filed on behalf of the United States Government, the Government corrects Masonry Solutions' application of the law on this point. The Government states that Masonry Solutions has incorrectly applied the standard of materiality. *See* R. Doc. 74. The Government notes that the "Made in USA" labels could, in fact, be material to a claim for payment even if they were not part of the contractual requirements if they merely had the potential of influencing the Government's decision to pay.

10

that the cost of the components manufactured in the United States exceeds the cost of all components. R. Doc. 59-4, at 9. In addition, Ruth discusses the nature of the spiral bar stock, a component of the spiral wall tie kits, which is purchased from sources in the United Kingdom. Ruth also states that, although not required by the BAA as to the spiral bar stock, over 51% of the value of the spiral wall tie kits, the project's end product, are the result of the domestic manufacturing operations.

Moreover, in its Motion, Masonry Solutions states that the total amount to be paid on the projects was agreed upon between the contractors and Masonry Solutions and that none of the contracts involved charges for time and material.[2] The schedule of values agreed upon did not reflect what Masonry Solutions would bill for any one particular item but was a lump sum price. Masonry Solutions further asserts that Kress has presented no evidence that a violation of the BAA occurred much less any evidence that Masonry Solutions influenced the government to make payments it did not owe. Thus, Kress has not shown that Masonry Solutions has made any false statement or false claim, with the requisite scienter and material to the government's payment of the claim, that caused the government to pay an amount to Masonry Solutions that it did not owe.

In opposition, Relator argues that Masonry Solutions has failed to meet its burden in its Motion for Summary Judgment as it has submitted only self-serving declarations in its defense, and has provided "almost no analysis as to why it should be dismissed" from the action. Instead,

---

[2] In its Statement of Interest, the Government also corrects Masonry Solutions' application of the law, stating that liability for a claim for payment—here, allegedly overbilling the Government—does not depend on the fact that Masonry Solutions did not bill any specific amount for materials delivered but only demanded payment in lump sums. R. Doc. 74. The Government asserts that if Masonry Solutions demanded payment of a general contractor who in turn passed on the claim to be paid with federal funds, the demand for payment is sufficient to subject it to liability regardless of the form of the payment. Thus, Relator could establish that the products fail to comply with the BAA are worthless or worth less than what the United States initially agreed to pay, and thus show that Masonry Solutions' demands for payment for non-compliant products were inflated.

11

Relator notes that Masonry Solutions appears to have "simply lifted portions of prior pleadings filed in the matter in which it sued Benetech in a separate matter relating to the steel material at issue herein." R. Doc. 64, at 4.

Relator also claims that Masonry Solutions attempts to skirt the issue of whether the spiral wall tie kits labeled "Made in USA" created a false statement despite acknowledging that the spiral steel ties were manufactured in England.  Relator argues that Masonry Solutions misconstrues the "materiality" test in arguing that no false statements were material as Masonry Solutions was not contractually required to label its boxes "Made in USA." Relator argues that he cannot refute whether all of the relevant contracts were "lump sum" or not because Masonry Solutions "refuses to cooperate with discovery."

In the alternative, Relator argues for a Rule 56(d) continuance. "Pointed discovery request [sic] have been made giving MSI every opportunity to produce evidence refuting the allegations, yet [Masonry Solutions] has done everything in its power to resist a full response." R. Doc. 64, at 2.  Relator states that "[a]fter much debate and several motions, [Masonry Solutions] produced just 41 pages of documentation most of which consists of self-serving statements by Wayne Ruth." R. Doc. 64, at 2.  Relator's counsel, in a declaration attached to his Opposition, asserts that he has propounded discovery requests directed to the issue of whether or not the materials supplied by Masonry Solutions comply with the Buy America Act and whether Masonry Solutions violated the False Claims Act. R. Doc. 64-1, at 1. Counsel states that he anticipates depositions will provide evidence that Masonry Solutions made false claims regarding the origin of products. *Id.* In Relator's Opposition, Relator states that he will seek another motion to compel if Masonry Solutions continues to evade discovery requests.

12

Upon review of Relator's Opposition, Relator repeatedly asserts that Masonry Solutions has failed to comply with requests as to violations of the BAA, and offers its non-compliance as the primary reason for continuing the Court's consideration of the instant motion. However, upon review of the record, the Court cannot agree. Without any pending Motion to Compel or any further notice of additional discovery disputes, a review of the record demonstrates that Masonry Solutions has met its discovery obligations. Moreover, there appears to be sufficient information to address the Relator's claim that Masonry Solutions failed to comply with the BAA and thus consider the instant Motion for Summary Judgment.

Masonry Solutions submitted a declaration and a detailed letter with supporting documents addressing precisely this issue—the origin and manufacturing process of the materials provided to the Government. Under the relevant provisions of the BAA, Masonry Solutions also demonstrates that the materials are in compliance with the applicable provisions. The enhancement anchors made from material purchased from China undergo a substantial transformation, without which the product would be useless, and thus created a new construction component that is manufactured in the United States. *See* 48 C.F.R. § 52.225-11; *Hirsch*, 1991 WL 102984, at *3. Moreover, as to the spiral wall tie kits, the spiral bars were purchased from England, a designated country exempt from the BAA requirements. *See id.* The kits included not only parts from England but also CIF material that was made at Masonry Solutions' Maryland facility. Thus, no facts would demonstrate that the label "Made in USA" was a false statement intended to induce the Government's payment of a claim.

Ultimately, without any facts establishing the violation of the BAA, the Relator has not demonstrated that Masonry Solutions violated the FCA in this case.[3] Relator's only argument

---

[3] Although Relator's Complaint alleges violations of the FCA and discusses overbilling, to the extent that Relator has alleged an FCA violation based solely on overbilling, this claim should not stand. An FCA claim may be barred

appears to be that Masonry Solutions has withheld information that would demonstrate its own violation of the BAA.  In his attached declaration, Relator's counsel simply states that he has "propounded discovery requests directed to the issue of whether or not the materials supplied by MSI comply with the Buy American Act and/or whether MSI violated the False Claims Act."  R. Doc. 64-1, at 1.  Counsel also states in his declaration that the parties have been in a discovery dispute "for months" and that Masonry Solutions remains resistant to full disclosures. He opines that future depositions will provide evidence that Masonry Solutions made false claims regarding the origin of the products provided for the Government projects.

      The Court notes, first, that the parties have had ample time to conduct discovery and resolve discovery disputes.  *See McKay*, 751 F.3d at 700-01. Though Relator mentions his intent to file another Motion to Compel, Relator has yet to file such a motion.  However, the Court also notes that, while discovery between the parties has been fraught with difficulties, the needed discovery will not further advance the Relator's claim in this instance.  The specific facts which Relator refers to in his Opposition—the origin of the products and manufacturing process—have already been produced; based on this information, Relator's requests are speculative, not specific.  Relator has referenced portions of depositions from Wayne Ruth and David Stokes, officers of Masonry Solutions, and yet has not offered evidence of false statements made.  Even

---

if there has been a "public disclosure" of the allegations forming the claim. 31 U.S.C. § 3730(e)(4). To determine whether the claim is barred, the Court considers (1) whether there has been a "public disclosure" of the allegations; (2) whether the action is "based upon" the publicly disclosed allegations; and (3) whether the relator qualifies as an "original source" of the information. *See U.S. ex rel. Branch Consultants, L.L.C. v. Allstate Ins. Co.,* 668 F. Supp. 2d 780, 788 (E.D. La. 2009); *U.S. ex rel. Garibaldi v. Orleans Parish Sch. Bd.*, 21 F. Supp. 2d 607, 613-14 (E.D. La. 1998).  According to the statute, "public disclosure" includes the publication of "allegations or transactions" in a "criminal, civil or administrative hearing." 31 U.S.C. § 3730(e)(4)(A); *see Garibaldi*, 21 F. Supp. at 614.  Here, any allegation of overbilling caused by Masonry Solutions agreement with Benetech, who then submitted the claims to the Government, has been publicly disclosed through prior litigation in which the Relator himself testified.  However, the Relator provided information as to Masonry Solutions' alleged non-compliance with the Buy American Act and his claims based on that ground accordingly have not been barred.

with such "scant" discovery provided by Masonry Solutions, as Relator laments, based on the Court's analysis above, additional discovery will not provide evidence a violation of the BAA such that Relator may establish a genuine issue of fact as to its FCA claims. Because a continuance of the Motion for Summary Judgment to conduct discovery would not produce facts that plausibly exist that would create a genuine issue of material fact, the Relator's alternative argument for a continuance is without merit. Thus, in conclusion, Relator has failed to carry its burden opposing summary judgment, and the Defendant has established that no genuine issue of material fact exists as to its liability under the BAA and the FCA.

Accordingly,

**IT IS ORDERED** that the Defendant's Motion for Summary Judgment (R. Doc. 59) is **GRANTED.**

New Orleans, Louisiana, this  8th  day of             June            , 2015.

_____
**STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT JUDGE**

15